## Hart et al. v. Hill et al.

June 17, 1947.

J. C. Carter, Jr., Judge.

Tanner Ottley for appellants.

Harlan Judd for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE REES— Affirming.

This appeal presents for construction an instrument dated March 22, 1871, which was executed by the

Trustees of the Presbyterian Church and College of Burkesville, Kentucky, upon receipt of $1,500 from the Trustees of the Church Erection Fund of the General Assembly of the Presbyterian Church in the United States of America, a body incorporated by an act of the New York Legislature passed March 31, 1855. Section 1 of the Act of incorporation reads in part: "1. Samuel T. Spear, Asa D. Smith, Edwin F. Hatfield, James W. McLane, Walter S. Griffith, Oliver H. Lee, Norman White, William E. Dodge, and Stephen H. Thayer, (designated for the purpose by the General Assembly of the Presbyterian Church, which met in Philadelphia, in May, 1854), and their successors in office, are hereby constituted a body corporate and politic, by the name of 'The Trustees of the Church Erection Fund of the General Assembly of the Presbyterian Church in the United States of America', for the purpose of aiding feeble congregations in connection with the said General Assembly in erecting houses of worship, and by that name, they and their successors shall and may have perpetual succession."

The incorporated body will be referred to hereafter as "Trustees of the Church Erection Fund." No action concerning the $1,500 advancement was taken until April 2, 1945, when the Trustees of the Church Erection Fund filed a declaratory judgment proceeding against K. M. Hill and others, Trustees of the Burkesville Public School Corporation, and C. W. Alexander, Jr., Trustee for the Bank of Cumberland, seeking a construction of the instrument of March 22, 1871. The court held that the instrument was a mortgage, and adjudged that it was barred by the statute of limitations. Plaintiffs have appealed.

It appears from the pleadings that the Trustees of the Presbyterian Church and College of Burkesville, Kentucky, purchased an unimproved tract of land, consisting of slightly more than three acres, located near the town of Burkesville. The land was conveyed to the Trustees on March 16, 1871, and on March 22, 1871, they executed to the Trustees of the Church Erection Fund the instrument which is the subject of the present controversy. The instrument, after naming the parties of the first and second part proceeds:

"Whereas, the said parties of the first part have applied to the said parties of the second part for aid to enable them to erect or possess a House of Worship, adapted to their wants; and, Whereas, the said parties of the second part have granted such aid to the amount of Fifteen hundred dollars $1500.00.

"Now, therefore, this Indenture witnesseth, that the said parties of the first part, in consideration of the above amount, do hereby covenant, grant, promise, and agree to and with the said parties of the second part, and do hereby become bound unto them as follows, that, in case the said parties of the first part shall cease to be connected with the said General Assembly, or the corporate existence of the said parties of the first part shall cease, or their house of worship be alienated, except for the building or the purchase of a better house of worship, then in such case they, the said parties of the first part, shall and will forthwith refund to the said parties of the second part, their successors or assigns, the said amount with interest thereon from the time of receiving it.

"This Indenture further witnesseth, that the said parties of the first part, for the better securing the performance by them of their covenant and obligation above mentioned, and the repayment of the said amount, with interest thereon, from the time of receiving it, to the said parties of the second part, in the case above mentioned, and in consideration of One Dollar to them paid by said parties of the second part, the receipt of which is acknowledged, have granted, sold, conveyed, and confirmed, and by these presents do grant, sell, convey, and confirm unto the parties of the second part, and to their successors and assigns forever."

Then follows the description of the property. After the habendum clause this appears: "Provided always, and these presents are upon this express condition, that if the parties of the first part, their successors or assigns, shall well and truly keep, perform, and fulfil their covenant and obligation hereinabove contained, and shall, in the case hereinabove provided, well and truly refund unto the said parties of the second part the said amount, with interest thereon from the time of receiving

it, then these presents and the Estate hereby granted shall cease, determine, and be void.''

It is then provided that if the corporate existence of the parties of the first part shall cease, or their house of worship be alienated, it shall be lawful for the parties of the second part to enter upon the premises and to sell same, and out of the money arising from the sale to retain the $1,500 mentioned in the instrument and interest thereon. Any overplus is to be paid to the parties of the first part, their successors or assigns. On December 13, 1909, the land referred to in this instrument was conveyed by the Trustees of Alexander College to Dix McComas and T. J. Lawhorn. The Trustees of Alexander College apparently were successors or assigns of the Trustees of the Presbyterian Church and College of Burkesville. On November 1, 1910, T. J. Lawhorn conveyed his one-half interest in the property to Dix McComas, and on August 2, 1912, McComas conveyed the property to the Burkesville Board of Education, and on May 19, 1936, the Board of Education conveyed it to the Burkesville Public School Corporation which, on the same day, executed a mortgage on the property for $10,000 to C. W. Alexander, Trustee for the Bank of Cumberland. It is appellants' contention that the instrument of March 22, 1871, conveyed an interest in the land to the Trustees of the Church Erection Fund and constituted that body a joint tenant, or tenant in common, and since it had no notice of subsequent transfers of the property or the claims of the various grantees, its claim has not been barred by the statute of limitations.

There can be no doubt that the instrument is a mortgage, and was so intended by the parties. It is denominated on its back ''Bond and Mortgage'' and carries the notation ''Recorded in Mortgage Book A, page 110.'' At the time it was executed, the Trustees of the Church Erection Fund were providing money to aid Presbyterian Churches. The plaintiffs filed with their petition a copy of the plan of the Board of the Church Erection Fund of the General Assembly of the Presbyterian Church in the United States of America as adopted by the General Assembly convened at Philadelphia in May, 1854, and approved by the General As-

sembly of 1870. The preamble of the plan reads: "The General Assembly of the Presbyterian Church in the United States of America, having, through the liberality of the congregations connected with this body, established a Fund for the purpose of aiding feeble congregations in erecting houses of worship, do hereby adopt the following Plan, under which this Fund shall be held, administered and used:"

Section 2 of Article 13 of the plan reads: "2. (1854, 1866) A mortgage upon the church property duly executed, and acknowledged by the Trustees, and recorded in the County Clerk's or Register's office, is to be returned to the Board, with a certificate endorsed upon said mortgage by an attorney-at-law, designated by the Presbytery, to the effect that the church has a valid title, in fee, to the property, and has full liberty to mortgage the same, and that said mortgage is a first lien upon the property, and has been properly executed, acknowledged, and recorded, according to law."

The plan nowhere provided for the acquisition by the Trustees of the Fund of any interest in real estate of aided churches other than the interest of a mortgagee. The plan contemplated aid to feeble churches in the form of loans secured by mortgages. Even a deed absolute on its face will be adjudged a mortgage where it is shown by all the facts and circumstances that the conveyance was intended only as security for a debt. Frazier v. Frazier, 282 Ky. 405, 138 S. W. 2d 506; Wade v. McGinnis, 247 Ky. 261, 56 S. W. 2d 1000; Moore v. Williamson's Ex'r, 192 Ky. 790, 234 S. W. 732. Here, the instrument did not purport to be a deed, but it had all the habiliments of a mortgage. The facts alleged by the plaintiffs and the exhibits filed with their petition demonstrate that it was intended merely as security for the loan of $1,500. Appellants place much stress on the technical words of conveyance in the instrument, but "a mortgage is simply a deed containing a clause of defeasance and no particular form of defeasance is required." Talley v. Eastland, 259 Ky. 241, 82 S. W. 2d 368, 371.

Appellants say that the deed of December 13, 1909, from the Trustees of Alexander College to Dix McComas and T. J. Lawhorn was void, and therefore the statute

of limitations did not run against their claim. It is not necessary to pass upon the validity of that deed, since appellants' cause of action accrued at least as early as 1909 when McComas and Lawhorn entered and held under their deed. One of the provisions of the instrument of March 22, 1871, was that the loan should become due when the property was alienated. The statute of limitations began to run against appellants' claim, regardless of its nature, even though the deed to McComas and Lawhorn was void. Foust v. Hill, 215 Ky. 364, 285 S. W. 235.

The court correctly adjudged that the instrument in question was a mortgage and was barred by the statute of limitations.

Judgment is affirmed.